IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TENTH STREET RESIDENTIAL ASSOCIATION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:19-CV-00179-N |
| THE CITY OF DALLAS, | § § § | |
| Defendant. | § | |

# **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant the City of Dallas, Texas's ("the City") motion to dismiss for lack of jurisdiction [18]. Because the Court holds that Plaintiff Tenth Street Residential Association ("TSRA") does not have standing to pursue its claims, the Court grants the City's motion.

## **I. Origins of the Dispute**

This case is about the City's procedures for demolishing dilapidated structures in historic districts. Two policies outlined in Section 51A-4.501 of the Dallas Development Code are at issue. The first allows the City Attorney's Office to seek a court order declaring a structure to be a public nuisance and ordering its demolition. Dallas Development Code § 51A-4.501(i) ("section 4.501(i)"). If the City obtains the court order, it must then file an application with the Landmark Commission seeking a certificate of demolition. Only after the Landmark Commission finds that postponing the demolition in the hopes of rehabilitation

is not feasible can the City demolish the structure. Importantly, this policy applies only to structures under 3,000 square feet.

The second procedure allows the City to demolish any structure — regardless of its size — if the Fire Marshall finds it to be in a particularly dangerous and hazardous condition. Dallas Development Code § 51A-4.501(j) ("section 4.501(j)"). This process is termed summary abatement, and does not require a court order or certificate from the Landmark Commission.

TSRA is an unincorporated association whose members are owner occupants of residential units in the Tenth Street Historic District ("the District"). Its primary mission is to preserve the historic homes and status of the District. Some eighty (80) homes in the District have been demolished under section 4.501(i). TSRA believes that because all of the structures in the District are under 3,000 square feet, and most of the District's residents belong to protected classes, that the City's application of section 4.501(i) makes housing unavailable on the basis of race and ethnicity.

TSRA also takes issue with the City's tax exemption program for residents who rehabilitate structures in historic districts. Under the program, different historic districts are assigned different eligibility requirements and exemption values. In the District, owners become eligible to receive an exemption from City property taxes worth 100% of the property's value if they invest at least 25% of the property's initial value in rehabilitation. In more affluent districts, owners have to invest 50% - 75% of the initial value of the structure to receive the exemption. In every district, however, so long as the owners meet

the eligibility requirement and completes the rehabilitation, they receive the exemption. TSRA believes that basing the value of the exemption on property values creates a disincentive for residents of the District to rehabilitate their homes. It argues that this disincentive contributes to the discriminatory unavailability of housing directly caused by section 4.501(i).

In an effort to stall the City's application of section 4.501(i) and reform its tax exemption program, TSRA filed suit in this Court in January 2019. Three months later, it filed an amended complaint alleging violations under the Fair Housing Act and Equal Protection Clause. The City now moves to dismiss TSRA's claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## II. THE RULE 12(B)(1) STANDARD

"A federal court's entertaining a case that is not within its subject matter jurisdiction is no mere technical violation; it is nothing less than an unconstitutional usurpation of state judicial power." CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522 (3d ed. 2019). Standing is a component of subject matter jurisdiction and is properly raised by a motion to dismiss for lack of subject matter jurisdiction under rule 12(b)(1). *See Hollis v. Lynch*, 121 F. Supp. 3d 617, 626 (N.D. Tex. 2015) ("whether a party has proper standing is a question of subject matter jurisdiction") (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).

A plaintiff must satisfy three elements to establish constitutional standing:

First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent,

not conjectural or hypothetical. Second there must be a casual connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted).

Plaintiff groups like TSRA may attempt to satisfy *Lujan's* requirements using either associational or organizational standing theories. To succeed on an associational standing theory, TSRA must show that its individual members meet the *Lujan* standing requirements; that is, that its members suffered a concrete and discrete injury at the hand of the City that can be redressed by the Court. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). In contrast, to establish organizational standing, TSRA must show that it, as an organization, satisfies the *Lujan* requirements. *Id.* at 238. Importantly, the alleged injury must "constitute far more than simply a setback to the organization's abstract social interests . . . ." *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Instead, the injury must show that the defendant's conduct "concretely and 'perceptibly impaired' [the organization's] ability to carry out its purpose." *Id.* at 239 (citing *Havens*, 455 U.S. at 379).

### III. THE COURT GRANTS THE CITY'S MOTION TO DISMISS

#### *A. TSRA Has Not Properly Shown Injury in Fact*

First, the Court rejects TSRA's organizational standing theory. TSRA argues that section 4.501(i) impedes its ability to serve its primary interest of preventing displacement and gentrification of the District. But at no point does TSRA explain how this injury is

concrete and discrete enough to satisfy *Lujan*. TSRA makes no allegation that the time it has spent counteracting the policy has impaired its ability to fulfill its purpose to the extent articulated in *N.A.A.C.P.* And while it alleges that the demolitions shrink its member pool, TSRA provides no information about whether the owners of the demolished structures were eligible to be members to begin with, or how a large membership pool benefits the organization. Accordingly, the Court holds that TSRA did not suffer an injury in fact as an organization.

The Court also rejects TSRA's associational standing theory. TSRA's argument stands on three legs: (1) the alleged imminent threat of demolitions to member homes; (2) the alleged imminent threat of the District losing its historic status; and (3) the tax exemption program's policy of linking exemption amounts with property values. All three break under scrutiny.

First, the Court does not believe the threat of demolitions is imminent. The fact that all of the buildings in the District are under 3,000 square feet does not mean that all of the buildings are destined for demolition. As detailed above, before the wrecking ball swings under section 4.501(i), a court has to label the structure a public nuisance and the Landmark Commission has to find that rehabilitation is not feasible. The potential for dilapidated, vacant structures to be demolished does not mean that any TSRA members face the imminent threat of losing their homes.

Second, the dispute between the parties as to the City's intentions regarding the District's historical status is irrelevant. The Texas Supreme Court has made clear that there

is no independent right of members to a particular zoning classification. *Jim Sowell Constr. Co. v. City of Coppell, Tex.*, 82 F. Supp. 2d 616, 618 (N.D. Tex. 1998) (citing *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972)). Thus, even if the threat of the District losing its historic status were imminent, it would not create a constitutional injury sufficient to create standing.

Lastly, the Court does not believe that the City's tax exemption program creates a constitutional injury. TSRA misconstrues the program. Unlike the initiative in *Inclusive Communities Project, Inc. v. Texas Department of Housing and Community Affairs*, 747. F.3d 275, 277 (5th Cir. 2014), the City's program is not a competitive form of financial assistance: every eligible candidate receives the exemption after the rehabilitation is completed. Because the value of the exemption is tied to the property's value, in gross terms, the most tax benefits will tend to go to owners in higher property value areas. But this in itself does not create a disincentive for individuals in the District to take advantage of the program. The total exemption pie is not diminished when owners in more affluent districts choose to rehabilitate; so long as the owners in the District invest the required amount and complete the rehabilitation, they will receive the exemption. Perhaps rehabilitation in areas like the District should be further subsidized, but that decision rests solely in the hands of the City Council, not the Court.

### B. TSRA Has Not Properly Shown Causation

Even if TSRA could show that it or its members suffered a concrete and discrete injury, it fails to properly trace the injury to the actions of the City. Its central argument is that because the City created section 4.501(i) and the tax exemption program, the City is the direct cause of TSRA's injuries. But TSRA has not shown how whatever injuries it or its members suffered as a result of the demolitions are traceable to the City and not the neglect of former property owners. At the end of the day, the structures were demolished because they were dilapidated: the former owners neglected them, abandoned them, and passed up opportunities like the tax exemption program to rehabilitate them. It is unclear how the City having different policies for differently sized structures is the reason these structures decayed beyond the point of feasible repair. Accordingly, the Court holds that TSRA has not established that whatever injuries it suffered are traceable to the City.

### C. TSRA Has Not Properly Shown Redressabiltiy

Lastly, even if TSRA had injuries that were traceable to the City, they would not be redressable by this Court. TSRA seeks an injunction that stops demolitions, changes section 4.501(i), and requires additional financial assistance for rehabilitation. But is unclear how this sort of injunction would meaningfully address TSRA's alleged injuries. The value or habitability of homes would not be improved by telling the City it cannot demolish dilapidated and unsafe structures. In addition, it seems entirely speculative that ordering the City to provide more financial assistance would actually cause more owners to rehabilitate structures. Indeed, it seems the only injunction that would actually address the injuries

TSRA alleges would be for the Court to order the City itself to repair and rebuild the homes. That relief is far better sought through advocacy with the City Council and far beyond what this Court believes it is authorized to grant.

## Conclusion

For the reasons stated above, the Court grants the City's motion to dismiss, and dismisses TSRA's claims without prejudice.

Signed June 25, 2019.

David C. Godbey
United States District Judge